**NOT FOR PUBLICATION**

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RANCHO DE CALISTOGA, | No. C 11-05015 JSW |
| Petitioner, | **ORDER GRANTING MOTION TO DISMISS, WITH LEAVE TO AMEND AND SETTING CASE MANAGEMENT CONFERENCE** |
| v. | |
| CITY OF CALISTOGA, et al., | |
| Respondents. | |
| _____/ | |

**INTRODUCTION**

This matter comes before the Court upon consideration of the motion to dismiss filed by Respondents, City of Calistoga (the "City") and W. Scott Snowden ("Mr. Snowden") (collectively, "Respondents"). The Court has considered the parties' papers, relevant legal authority, and the record in this case, and it finds the matter suitable for disposition without oral argument. *See* N.D. Civ. L.R. 7-1(b). The Court HEREBY GRANTS the motion to dismiss, and it GRANTS the Parkowner leave to amend.

**BACKGROUND**

On October 11, 2011, Petitioner, Rancho de Calistoga (the "Parkowner"), filed a Petition for Writ of Administrative Mandamus. On the same day, the Parkowner filed Petition for a Writ of Administrative Mandamus pursuant to California Code of Civil Procedure Sections 1094.5, *et. seq.,* in the Superior Court of the State of California for the County of Napa (the "state court proceedings"). (Request for Judicial Notice, Ex. B.) The state court has scheduled a hearing on the petition for November 9, 2012, and the Parkowner's opening brief is not due until August.

United States District Court

For the Northern District of California

United States District Court

For the Northern District of California

1   (Docket No.23, Joint Status Report re State Court Proceedings.)

2       The Parkowner owns and operates Rancho de Calistoga Mobilehome Park (the "Park"),

3   a 184 space mobile home park in the City of Calistoga (the "City"), which it has owned since

4   approximately 1977.  (Petition ¶¶ 11-14.)  At that time, the City did not have a rent control

5   ordinance, and the Parkowner alleges that it had a "legitimate investment backed expectation ...

6   that it would be entitled to set the rent at the market rate and that it would not be precluded from

7   charging a non-excessive or non monopolistic rent at" the Park.  (*Id.* ¶ 17.)

8       In 1984, the City adopted Ordinance No. 400, entitled Mobile Home Park Rent

9   Stabilization, which was amended in 1993 and again in October 2007 (hereinafter the

10  "Ordinance").  (*Id.* ¶¶ 21-25; Respondents' Request for Judicial Notice, Ex. A (Ordinance No.

11  644).)  The Ordinance provides, *inter alia*, that "[i]t is necessary to protect mobile home

12  homeowners and residents of mobile homes from unreasonable rent increases and at the same

13  time recognize the rights of mobile home park owners to maintain their property and to receive

14  just and reasonable return on their investments."  (Ordinance, § 2.22.010.B.4[1]; *see also id.* §

15  2.22.010.D.1-6.)  The Ordinance authorizes a yearly increase in rent that equals the lesser of (1)

16  100% of the percent change in Consumer Price Index; or (2) 6% of the base rent.  (*Id.* §

17  2.22.070.A)  If a park owner wants to increase the rent above that amount, the Ordinance

18  provides for an administrative process to consider such requests.  (*Id.* § 2.22.080.)

19      According to the Parkowner, the market rental value for spaces at the Park in October

20  2009 was $625 per month and actual average rent at the Park was approximately $471.

21  (Petition ¶ 26.)  On or about July 26, 2010, the Parkowner provided Park tenants with a ninety

22  day notice of rent increase and advised them that it intended to increase the rent to $625 per

23  month, effective November 1, 2010.  The City appointed Mr. Snowden as a hearing officer and

24  held evidentiary hearings on the proposed rent increase.  (*Id.* ¶¶ 27-28.)  On July 14, 2011, Mr.

25  Snowden issued his decision and concluded that an increase of $60 per space was reasonable.

26  As a result of that ruling, the Parkowner was permitted to raise the rent only to $537.59.  The

27

28      [1]    The Ordinance has been codified as Section 2.22 of the Calistoga Municipal Code.

2

1   Parkowner alleges that because it was not permitted to increase the rent to $625, it has suffered

2   a "loss of income of at least $248,201.28 per year and a loss in the market value of the

3   Parkowner's property of at least $3,971,220.48. (*Id.* ¶¶ 38, 40-41.)

4   Based on these and other allegations, the Parkowner alleges that Respondents' actions

5   violate the takings, due process and equal protection clauses of the United States Constitution

6   and the California Constitution. (*See generally id.* ¶¶ 49-66.)[2]

7   ## ANALYSIS

8   **A.    Applicable Legal Standards.**

9   Respondents move to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1), for

10   lack of subject matter jurisdiction, and Rule 12(b)(6), for failure to state a claim. When a

11   defendant moves to dismiss a complaint or claim for lack of subject matter jurisdiction the

12   plaintiff bears the burden of proving that the court has jurisdiction to decide the claim.

13   *Thornhill Publ'n Co. v. Gen. Tel. & Elecs. Corp.*, 594 F.2d 730, 733 (9th Cir. 1979). A motion

14   to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) may be "facial or factual."

15   *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).

16   A facial attack on the jurisdiction occurs when factual allegations of the complaint are

17   taken as true. *Fed'n of African Am. Contractors v. City of Oakland*, 96 F.3d 1204, 1207 (9th

18   Cir. 1996). The plaintiff is then entitled to have those facts construed in the light most

19   favorable to him or her. *Id.* A factual attack on subject matter jurisdiction occurs when

20   defendants challenge the actual lack of jurisdiction with affidavits or other evidence. *Thornhill*,

21   594 F.2d at 733. In a factual attack, plaintiff is not entitled to any presumptions or truthfulness

22   with respect to the allegations in the complaint, and instead must present evidence to establish

23   subject matter jurisdiction. *Id.*

24   A motion to dismiss is proper under Rule 12(b)(6) where the pleadings fail to state a

25   claim upon which relief can be granted. The Court construes the allegations in the complaint in

26   the light most favorable to the non-moving party and all material allegations in the complaint

27

28   _____

[2]      The Petition is structured to include one cause of action for "Administrative
Mandate," which is premised the legal theories set forth above.

United States District Court
For the Northern District of California

United States District Court

For the Northern District of California

1   are taken to be true. *Sanders v. Kennedy*, 794 F.2d 478, 481 (9th Cir. 1986).  However, even

2   under the liberal pleading standard of Rule 8(a)(2), "a plaintiff's obligation to provide the

3   'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a

4   formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v.*

5   *Twombly*, 550 U.S. 544, 555 (2007) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

6          Pursuant to *Twombly*, a plaintiff must not merely allege conduct that is conceivable but

7   must instead allege "enough facts to state a claim to relief that is plausible on its face." *Id.* at

8   570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the

9   court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

10  *Ashcroft v. Iqbal*, 556 U.S.662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).  "The plausibility

11  standard is not akin to a probability requirement, but it asks for more than a sheer possibility

12  that a defendant has acted unlawfully.... When a complaint pleads facts that are merely

13  consistent with a defendant's liability, it stops short of the line between possibility and

14  plausibility of entitlement to relief." *Id.* (quoting *Twombly*, 550 U.S. at 557) (internal quotation

15  marks omitted).  If the allegations are insufficient to state a claim, a court should grant leave to

16  amend, unless amendment would be futile.  *See, e.g., Reddy v. Litton Indus., Inc.*, 912 F.2d 291,

17  296 (9th Cir. 1990); *Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv., Inc.*, 911 F.2d 242,

18  246-47 (9th Cir. 1990).

19  **B.     The Parkowner's Facial Challenges to the Ordinance Are Time Barred.**

20         Respondents move to dismiss the Parkowner's facial challenges to the Ordinance on the

21  basis that they are barred by the statute of limitations.  "California's statute of limitations for

22  personal injury actions governs claims brought pursuant to 42 U.S.C. § 1983." *Colony Cove*

23  *Properties, LLC v. City of Carson*, 640 F.3d 948, 956 (9th Cir. 2011).  In the takings context,

24  the statute of limitations on a facial challenge to an ordinance "runs from the time of

25  adoption...." *Id.* (citing *Guggenheim v. City of Goleta*, 638 F.3d 1111, 1119 (9th Cir. 2010)).

26  Based on the facts of this case, that rationale is equally applicable to the facial challenges based

27  on violations of substantive due process and equal protection.  The ordinance was adopted in

28  1984, and substantively amended on October 2, 2007.  However, Parkowner did not file this suit

1    until October 11, 2011, over two years after the statute of limitations had expired.  *See Colony*

2    *Cove*, 640 F.3d at 956-57.  Parkowner's facial challenges to the Ordinance are barred by the

3    statute of limitations.

4         Accordingly, the Court grants Respondents' motion, in part, on this basis.

5    **C.    The Court Dismisses the Takings Claim, with Leave to Amend in Part.**

6         The "takings clause" provides that private property shall not be "taken for public use,

7    without just compensation."  U.S. Const., amend. 5.[3]  The Parkowner advances two theories in

8    support of its as-applied takings claim.  First, it contends that the application of the Ordinance

9    amounts to a private taking.  In the alternative, the Parkowner alleges that application of the

10   Ordinance amounts to a regulatory taking.

11        **1.    The Parkowner Fails to State A Private Takings Claim.**

12        The Parkowner's primary theory of the case is that "despite its purported public purpose,

13   the City has applied" the Ordinance "in a manner that results in a purely private taking of

14   property," *i.e.* the Ordinance does not satisfy the "public use" requirement of the takings clause.

15   (Opp. Br. at 1:17-19; *see also id.* at 14:7-10.)  Respondents argue that the facts alleged are

16   insufficient to state a claim for a private taking.

17        In order to satisfy the "public use" clause, a taking need only be "rationally related to a

18   conceivable public purpose."  *Hawaii Housing Auth. v. Midkiff*, 467 U.S. 229, 241 (1984)

19   ("*Midkiff*"); *see also Kelo v. City of New London*, 545 U.S. 469, 488 (2005).  However, the City

20   may not take the Parkowner's property "for the purpose of conferring a private benefit on a

21   particular private party," nor can it "take property under the mere pretext of a public purpose,

22   when its actual purpose [is] to bestow a private benefit."  *Kelo*, 545 U.S. at 477-78; *see also*

23   *Midkiff*, 467 U.S. at 245 ("A purely private taking could not withstand the scrutiny of the public

24   use requirement; it would serve no legitimate purpose of government and would thus be void.").

25        The Ordinance states that its purpose is to, *inter alia*, "[p]revent exploitation of the

26   shortage of vacant mobile home park spaces, ... [r]ectify the disparity of bargaining power that

27   ───────────────

28        [3]    This clause is made applicable to the States by the Fourteenth Amendment.
     *See Kelo v. City of New London*, 545 U.S. 469, 472 n.1 (citing *Chicago, B & Q.R. Co. v.*
     *Chicago*, 166 U.S. 226 (1897)).

United States District Court

For the Northern District of California

United States District Court

For the Northern District of California

1  exists between mobile home park homeowners and mobile home park owners," and prevent

2  excessive and unreasonable rent increases while providing a process by which parkowners can

3  obtain a reasonable rate of return on their investment.  (Ordinance, §§ 2.22.010.D.1-6,

4  2.22.010.B.1-5.)  The Parkowner alleges that the uncontradicted evidence at the hearing showed

5  that the rent it seeks to charge is below market, that it does not have monopoly power, and that

6  "it is not possible for a parkowner to exercise any perceived superior bargaining position or

7  exploit a tenant unless and until the requested or actual rent charged is above market."  (Petition

8  ¶¶ 32, 34.)  The Parkowner also alleges that there was no evidence that it had attempted to

9  exploit any alleged shortage of mobile home park spaces and has, in fact, increased the amount

10  of spaces in Napa, Sonoma and Marin counties.  (*Id.*, ¶ 27.)  However, these allegations do not

11  show that the City's stated purpose for enacting the ordinance is a mere pretext to confer a

12  private benefit on a private party.  Rather, as is evident from the Petition, the Parkowner alleges

13  that the Ordinance does not actually serve its stated purpose.  (*Id.* ¶¶ 43, 57.)  Those allegations

14  are insufficient to state a claim that the Ordinance has been applied in a manner that violates the

15  "public use" requirement of the Takings Clause.  *See Kelo*, 545 U.S. at 487-88; *Action Apt.*

16  *Ass'n, Inc. v. Santa Monica Rent Control Board*, 509 F.3d 1020, 1023-24 (9th Cir. 2007).

17       The Court also finds the Parkowner's reliance on *Armendariz v. Penman*, 75 F.3d 1311

18  (9th Cir. 1996) and *99 Cents Only Stores v. Lancaster Redevelopment Agency*, 237 F. Supp. 2d

19  1123 (C.D. Cal. 2001) to be misplaced.  In the *Armendariz* case, the defendant conducted a

20  series of housing code enforcement sweeps, "the ostensible purpose" of which "was the

21  reduction of urban blight."  *Armendariz*, 75 F.3d at 1314.  The plaintiffs alleged, however, that

22  this purpose was a pretext and that the defendant's true motive was to deprive plaintiffs of their

23  property so that a commercial developer could acquire the property cheaply.  *Id.,* at 1314-15,

24  1320-1321.  The court concluded that "if the allegations are true," the alleged taking "would

25  seem not to have been for a 'public use' the Fifth Amendment requires but rather for the use of

26  another private person...."  *Id.* at 1321.  Similarly, in the *99 Cents* case, the evidence on

27  summary judgment demonstrated that "the *very reason* that [the defendant] decided to condemn

28  [the plaintiff's] leasehold interest was to appease Costco," which threatened to leave its anchor

6

1    tenancy.  "Such conduct amounts to an unconstitutional taking for purely private purposes."  *99*

2    *Cents*, 237 F. Supp. 2d at 1129 (emphasis in original).  There are no such facts alleged in this

3    case.

4            Accordingly, the Court grants, in part, the motion to dismiss the Petition on this basis.

5    Because the Court cannot say that the Parkowner could not allege facts that might give rise to a

6    private taking, the Court shall grant the Parkowner leave to amend.

7            **2.      The Regulatory Takings Claim Is Not Ripe.**

8            Respondents move to dismiss the Parkowner's regulatory takings claim on the basis that

9    it is not yet ripe, because Parkowner has not yet been denied just compensation.  In order to

10   determine whether a regulatory takings claim is ripe, a plaintiff must show that: (1) the

11   underlying administrative action is final; and (2) the plaintiff sought and was denied

12   "'compensation through the procedures the State has provided for doing so.'"  *Colony Cove*,

13   640 F.3d at 958 (quoting *Williamson County Regional Planning Comm'n v. Hamilton Bank of*

14   *Johnson City*, 473 U.S. 172, 194 (1985)); *see also Guggenheim*, 638 F.3d at 1116-17 (and

15   noting that first requirement does not apply to a facial challenge).

16           Under California law, "[t]he state procedure a plaintiff asserting an as applied challenge

17   to a rent control ordinance must pursue includes a '*Kavanau* adjustment,' which includes filing

18   a writ of mandamus in state court and, if the writ is granted, seeking an adjustment of future

19   rents from the local rent control board."  *Colony Cove*, 640 F.3d at 958 (citing *Kavanau v. Santa*

20   *Monica Rent Control Board*, 16 Cal. 4th 761 (1997)).  "California's creation and

21   implementation of the *Kavanau* adjustment process provides 'an adequate procedure for seeking

22   just compensation, [and] the property owner cannot claim a violation of the Just Compensation

23   Clause until it has used the procedure and been denied just compensation.'"  *Equity Lifestyle*

24   *Props., Inc. v. County of San Luis Obispo*, 548 F.3d 1184, 1192 (9th Cir. 2008) (quoting

25   *Williamson*, 473 U.S. at 195)).  It is undisputed that the state court proceedings have not been

26   resolved.  Thus, Parkowner has not yet been denied compensation through the procedures

27   provided for by the State.  *Williamson*, 473 U.S. at 194; *Colony Cove*, 640 F.3d at 958.

28

United States District Court

For the Northern District of California

1    Accordingly, the Court grants, in part, the motion to dismiss on this basis as well.  If the

2    Parkowner chooses to amend, it may not proceed upon a regulatory takings theory unless that

3    claim is ripe.

4    **D.    The Court Dismisses the Equal Protection and Substantive Due Process Claims.**

5    Respondents move to dismiss the Parkowner's substantive due process and equal

6    protection claims on the basis that it is subsumed by Parkowner's takings claims.  *See, e.g.,*

7    *Crown Point Development, Inc. v. City of Sun Valley*, 506 F.3d 851, 855 (9th Cir. 2007) ("[T]he

8    Fifth Amendment would preclude a due process challenge only if the alleged conduct is actually

9    covered by the Takings Clause.  [*Lingle v. Chevron, U.S.A., Inc.*, 544 U.S. 528 (2005)] indicates

10   that a claim of arbitrary action is not such a challenge."); *see also Lingle*, 544 U.S. at 543

11   (suggesting a plaintiff may be able to state a claim based on land-use regulation if "government

12   action ... is so arbitrary as to violate due process").  Respondents argue that if the Court

13   concludes these claims are not subsumed by the takings claim, the facts alleged are insufficient

14   to state a claim for violations of the Parkowner's substantive due process or equal protection

15   rights.

16   In the *Colony Cove* case, the court held that a substantive due process challenge based

17   on the plaintiff's contention that application of the rent control ordinance "denied it a fair return

18   on its investment," was "subsumed by the Takings Clause" and was not legally cognizable.  640

19   F.3d at 960.  Here, as in *Colony Cove*, the Parkowner's substantive due process claim is based

20   allegations that Respondents did not fully approve the requested rent increase.  To that extent,

21   Parkowner's substantive due process claim is subsumed by the regulatory takings claim and is

22   not cognizable.

23   The *Colony Cove* court also concluded that the plaintiff failed to state a substantive due

24   process claim.  *Id.* at 960-62.  The court noted that the rent control ordinance did not require the

25   defendants to use a particular method to evaluate a request for a rent increase.  Rather the

26   defendant was required to consider a number of factors, none of which were determinative.  The

27   court also noted that it was bound by precedent holding that similar rent control ordinances

28   have a rational basis.  *Id.* at 961 (citing *Guggenheim*, 638 F.3d at 1123).  Thus, the court

United States District Court

For the Northern District of California

1   concluded that the plaintiff's factual allegations "do not provide a sufficient basis for a claim

2   that the Board's decision on [its] application for a rent increase reflects action that was

3   arbitrary, irrational, or lacking any reasonable justification in the service of a legitimate

4   government interest," and it affirmed the district court's decision to dismiss the substantive due

5   process claim.  *Id.* at 961-62.

6          For the reasons set forth above, in connection with the private takings claim, the Court

7   finds that the allegations in the Petition merely reflect the Parkowner's disagreement with the

8   outcome of the Respondent's decision and are not sufficient to state a claim that Respondent's

9   conduct was "arbitrary, irrational, or lacking any reasonable justification in the service of a

10  legitimate government interest."  *Id.* at 962; *see also Equity Lifestyle*, 548 F.3d at 1193-94

11  (affirming dismissal of substantive due process claim based on application of rent control

12  ordinance to plaintiff).  Therefore, the Court grants, in part, Respondent's motion to dismiss on

13  this basis as well.  For the same reasons, the Court also finds that the facts alleged are

14  insufficient to state an equal protection claim.  *See Equity Lifestyle*, 548 F.3d at 1195 (affirming

15  dismissal of equal protection claim).

16         Because the Court cannot say that the Parkowner could not allege any facts that might

17  support a substantive due process claim or an equal protection claim, it shall grant leave to

18  amend.  However, the Parkowner must be able to allege facts that would demonstrate these

19  claims are not subsumed by the takings claim.

20  **E.     The Parkowner's Request to Stay or Abstain is Denied Without Prejudice.**

21         The Parkowner argues, in passing, that the Court should stay or abstain pursuant to

22  *Railroad Commission of Texas v. Pullman Co.*, 312 U.S. 496, 500-01 (1941) or *Younger v.*

23  *Harris*, 401 U.S. 37 (1971).  (*See* Opp Br. at 2:10-11 (citing *Pullman* and *Gilbertson v.*

24  *Albright*, 381 F.3d 965, 968 (9th Cir. 2004)).  Because the Court concludes that the Parkowner

25  has not stated a live federal constitutional claim, it does not reach the issue of whether it should

26  stay those claims or abstain from deciding them under either *Younger* or *Pullman*.  *See, e.g.,*

27  *San Remo Hotel v. City and County of San Francisco*, 145 F.3d 1059, 1101 (9th Cir. 1998) (If

28  the plaintiff "cannot clear the first hurdle, *i.e.,* if we conclude that all his constitutional claims

are unripe, time-barred or precluded, abstention becomes irrelevant.  There would nothing to 'abstain' from.").  This ruling is without prejudice to the Parkowner raising these issues in subsequent briefing, if it chooses to amend its Petition.[4]

### CONCLUSION

For the reasons set forth above, the Court GRANTS Respondents' motion to dismiss, and it GRANTS the Parkowner leave to amend if it can allege facts that would give rise to a "private takings" claim.  The Parkowner shall file an amended petition by no later than July 25, 2012.  It is FURTHER ORDERED that the parties shall appear for a case management conference on Friday, October 5, 2012 at 1:30 p.m.  The parties' Joint Case Management Statement shall be due on September 28, 2012.

If the Parkowner chooses not to amend its Petition, it shall file a notice of that intent by no later than July 25, 2012.  The Court will then dismiss this case.

**IT IS SO ORDERED.**

Dated: June 27, 2012

_____
JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE

---

[4]     The Parkowner also includes allegations that "Respondents' actions are invalid under California Code of Civil Procedure Section 1094.5."  (Petition, ¶ 60.)  If the Parkowner's intent was to include a separate claim for a writ of mandamus under Section 1094.5 in this Court, the Court declines to exercise supplemental jurisdiction over that claim. Moreover, it would appear that any such claim should be dismissed under *Younger. See Equity Lifestyle*, 548 F.3d at 1188-89, 1196-97 (dismissing claim for writ under Section 1094.5 under *Younger* in light of state court proceedings raising nearly identical claims).

United States District Court

For the Northern District of California